CASE 77.—ACTION BY THE ADMINISTRATOR OF J. W. HILL, DECEASED, TO SETTLE HIS ESTATE INVOLVING THE QUESTION OF ADVANCEMENTS TO HIS CHILDREN.—April 25.

## Hill's Guardian v. Hill, &c.
## Galbraith v. Same

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

From the decree of distribution, J. W. Hill's guardian and Rebecca T. Gailbreath prosecute separate appeals. Reversed.

1. Evidence—Advancements—Declarations of Parent—On an issue as to whether money given by a parent to a child was an advancement, evidence of declarations by the parent made after the gift to the effect that it was an advancement was not competent.

2. Same—Book of Accounts—On an issue whether money given by a parent to a child was an advancement, a book of accounts kept by the parent and in which the child was debited was admissible to show the amount of the alleged advancement and the purposes for which it was made.

3. Descent and Distribution—Money to Obtain Professional Education—Under Ky. Stats., 1903, section 1407, declaring that any property or money given by a parent or grandparent to a descendant shall be charged to the descendant and those claiming through him on distribution of the estate of the parent or grandparent, except that the maintaining or edu-

cating or the giving of money to a child or grandchild without any view to a portion or settlement in life shall not be deemed an advancement, sums furnished by a father to his son to enable the latter to obtain a professional education and charged to the son in a book of accounts kept by the father should be regarded as advancements.

JOHN S. KELLY, attorney for Wallace Hill's guardian.

## POINTS AND AUTHORITIES.

1. The account of monies alleged to have been expended for the education of the son, B. Frank Hill and which is charged against the interest of the infant Wallace Hill as an advancement to his father is a mere statement of the son's indebtedness to the father, and it is a well settled principle that a debt from the child to the parent cannot be converted into an advancement.

2. Since the enactment of the present statute upon advancements, the purpose or intention of the parent in making the gift, has nothing to do with determining if it was an advancement; but it is the legislative will that is consulted and not the intention of the intestate. (Bowles v. Winchester, etc., 13 Bush, 12; sec. 1407, Ky. Stats.; Gaston's Adm'r v. Robards (Superior Ct. filed Jan., 1888); Owsley v. Owsley, 25 L. R., 1199.)

3. Money or property given to a child or grandchild by the parent, should not be charged to him, unless it is given with a view to a portion or settlement in life. Neither can money or property given by the parent to a child or grandchild for the purpose of maintenance or education be charged as an advancement. (Sec. 1407, Ky. Stats.; Clark v. Clark, 17 Ben. Mon., 706; Brannock, etc. v. Hamilton, etc., 9th Bush, 448; Bailey's Adm'r v. Barclay, 22 L. R., 1246; Bowles v. Winchester, 13th Bush, 11.)

4. The character or kind of education, whether it is ordinary, academic, highly scholastic or professional does not affect the question as to whether the sums expended by the parent for the child, are in law chargeable as an advancement. (White v. Moore, 23 S. Car, 456; Coner v. May 3rd Strobh. Eq. Rep'r, vol. 3, 188; S. Car. Statute; Edwards v. Freeman, 2 P. Wms., 435; 2 Eng. Rule Cases, 261; Taylor v. Taylor, L. R. Eq., 155; 44 L. J. Ch., 718.)

5. The declarations of the intestate as to the sums paid his son B. F. Hill for his medical education made subsequent to the gift by the donor were incompetent. (Baileys Adm'r v. Barclay, 22nd L. R., 1246.)

Hill's Guardian v. Hill, &c.

6. Even if the intestate made entries in his account books at the time for the amount paid for the education of his sons, this does not affect the question of advancement. This is true even in jurisdictions where the intention of the testator is permitted to control. (Miller's Appeal, 40 Pa. Stat., 57; 80 Amer. Dec., 555; Am. & Eng. ency. of Law, vol. 1, 780.)

C. T. ATKINSON & N. W. HALSTEAD for appellee.

1. Advancements. Since our present statute, the Common Law of Hotchpot has been abrogated; and whether a gift to a child by an intestate is an advancement or not, must be determined by its provisions, as construed by this court. It applies in all cases of total or partial intestacy; its object being equality between heirs at law or distributees. What is not an advancement under the statute, cannot be made such by the declaration of the intestate, verbal or written; and what is an advancement under the statute must be charged to the one receiving it, notwithstanding any declarations of the intestate to the contrary.

2. Section 1407, Ky. Stats., provides substantially, that real or personal property or money given or devised by a parent or grandparent to a descendent, shall be charged to the descendent, or those claiming through him, in the division or distribution of the undevised estate, etc. The only exception being "the maintaining or educating, or the giving of money to a child or grandchild without any view to a portion or settlement in life, shall not be deemed an advancement."

3. The court will observe, that for a party to fall within the exception, the gift must not only be maintenance, education or money, but it must also be without any view to aportion or settlement in life. The burden is upon the party disclaiming the advancement to show that such gift was made without such view; and the object of the law being equality, the party seeking the advantage of the exception, must show his gift is embraced by the exception.

4. It is the policy of the law, which delights in equality, to encourage parents to educate their children, and the more the better; and if where a parent advances his children, some with property and some with professions, if the latter cannot be charged as advancements, it would have a tendency to discourage higher education, and to that extent be against the policy of the law.

### AUTHORITIES CITED.

Ky. Stat., sec. 1407; Bowles v. Winchester, 13 Bush, 11; Boone v. Thornsbury, 21 Ky. Law Rep., 368; A. & E. Ency of Law, 1st Ed., vol., 17, page 346; Turner v. Gaither, 83 N. C., 357; Schouler's Dom. Rel., sec. 242, etc.; Sup. Ct. of N. Y., in re Ryder, pages 11, 185.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Reversing.

These two appeals involve questions that arose in a settlement of the estate of Dr. J. W. Hill, and by agreement of counsel are heard together.

To clearly understand the issues, it will be necessary to state in detail the facts. Dr. J. W. Hill, having survived his wife, died in September, 1903, leaving surviving him a son, Dr. J. W. Hill; a daughter, Ada Hill, and a grandchild, J. Wallace Hill, son of a deceased son, B. F. Hill, as his only heirs at law. He owned at his death an interest in a house and lot in Louisville, Ky., and a house and lot in Bardstown, and personal estate of little value. The Bardstown property sold under decree for $4,000, and the Louisville property for $2,500. The administrator brought suit for a settlement of the estate, and averred among other things that the Louisville property was conveyed to the decedent and his wife and Rebecca Gailbraith, and that each owned an undivided one-third thereof; that a note of $515, asserted as a claim against the estate by Mary V. Powell, although signed by the decedent, and Rebecca Gailbraith, was in fact the debt of Rebecca Gailbraith alone; this Rebecca Gailbraith denied, and presented a claim against the estate for $329, and also claimed to be the owner of an undivided one-half interest in

the Louisville property; and Ada Hill filed a claim for $41.25. She also alleged that her father advanced to B. F. Hill to enable him to obtain a medical education, $733, and in addition thereto, $405 in cash, and a sewing machine worth $20, in all $1,138, and this sum she asked that his son J. Wallace Hill be charged with as an advancement; that he had advanced to his son, Dr. J. W. Hill to enable him to obtain a professional education and in cash the sum of $1,325, and sought to charge him with this amount as an advancement. The infant, J. Wallace Hill, after denying that his father should be charged with the advancements, averred that if he was charged, that Ada Hill should also be charged with an equal sum as an advancement for her education, and that Ada Hill and Rebecca Gailbraith should be charged with various other amounts. Dr. J. W. Hill admitted that the charge against him of $1,325 was correct, and on hearing of the case the chancellor adjudged that J. Wallace Hill should be charged with $1,138, advanced to his father —being the full amount of the advancement asserted against him, less the value of the sewing machine, $20; Ada Hill was allowed $38.25 on her claim of $41.25; Rebecca Gailbraith was adjudged to own one-half of the Louisville property, and was charged with the payment of the Mary V. Powell note, and was only allowed $107.30 on her claim of $329 against the estate; Rebecca Gailbraith and Ada Hill were charged with $129.33 rent of the Bardstown house from October 17, 1903, until the 1st of May, 1904, at the time the purchaser took possession under a decretal sale. J. Wallace Hill complains of so much of the judgment as charges him with the advancements to his father, as gave Rebecca Gailbraith one-

half of the Louisville property, of the allowance of
$38.25 on the claim of Ada Hill, and of the allowance
of $107.30 on the claim of Rebecca Gailbraith. Rebecca
Gailbraith complains of the judgment requiring her
to pay the note of Mary V. Powell, and interest. Ada
Hill and Rebecca Gailbraith complain of the judgment
requiring them to pay $129.33 rent.

The most important question to be determined is
whether or not the infant shall be charged with the
advancement to his father to enable him to obtain a
professional education. Section 1407 of the Kentucky
Statutes of 1903 reads: ''Any real or personal
property or money, given or devised by a parent or
grand-parent to a descendant, shall be charged to the
descendant of those claiming through him in the
division and distribution of the undevised estate of
the parent or grand-parent; and such party shall
receive nothing further therefrom until the other
descendants are made proportionately equal with
him, according to his descendible and distributable
share of the whole estate, real and personal, devised
and undevised. The advancement shall be estimated
according to the value of the property when given.
The maintaining or educating, or the giving of money
to a child or grand-child, without any view to a
portion or settlement in life, shall not be deemed an
advancement.'' This statute has been before the
court in a number of cases, and various features of it
have received construction, but the precise question
here presented has never been passed on. It appears
from the record that Dr. J. W. Hill kept a book of
accounts against his two sons, B. F. Hill and J. W.
Hill, in which book the following entries appear at
the head of the account of B. F. Hill: ''B. F. Hill, dr.,

to J. W. Hill, for cash furnished him at medical school at Louisville, and New York school, as follows." Then follows a number of cash items, making the amount before mentioned. The account against J. W. Hill is entered in substantially the same way. He did not keep any account against his daughter, Ada Hill, nor does it appear that he ever contemplated charging her with any advancements, nor does. the record disclose what advancements, if any, she received.

Several witnesses testified as to statements made by Dr. Hill, indicating a purpose on his part to charge his two sons with the advancements made to them for the purpose of obtaining college and professional educations. Some of these declarations were made during the time the money was being expended, and others subsequently. In Bailey's Admr. v. Barclay, 109 Ky., 639; 60 S. W., 377; 22 Ky. Law Rep., 1244, the court held that declarations of a donor prior to or contemporaneous with the advancements are competent, but that subsequent declarations are inadmissible, unless a part of the res gestæ, or against the interest of the donor. And under the rule announced in this case, the declarations of Dr. Hill subsequent to the advancements made to his son are not competent evidence; but the book of accounts kept by Dr. Hill is competent to show the amount of the advancements, and the purpose for which the advancements were made, and is further competent, as we shall presently show, for the purpose of establishing that the advancements were made to B. F. Hill with a view to a portion or a settlement in life. In Bowles v. Winchester, 13 Bush., 1, the court held that the intention of the testator will

not control either as to gift of money or land; the cardinal object of the statute being to make those entitled to the estate equal in its distribution. The provision of the statute that "maintaining or educating, or the giving of money to a child or grand-child, without any view to a portion or settlement in life, shall not be deemed an advancement," is the only exception, and in all other cases the gift or devise must be charged. In that case the court further said in determining whether the gift to the heir is within the exception provided by the statute, the chancellor must take into consideration the character and value of the ancestor's estate, the sum of money given to the child, and the purpose for which it is to be applied. And while no definite rule can be prescribed, the exception in the statute applies alone to money given for the purposes of amusement, health, education, maintenance, or temporary enjoyment, and not with a view to its investment in property, or its appropriation in any mode in which it may be permanently enjoyed. It is the duty of the parent to give to his child an ordinary education, and also to maintain and provide for him during infancy, and money or property necessary for these purposes will not be charged to the child as an advancement (Brannock v. Hamilton, 9 Bush., 446), nor should the child be charged with money given to it in trifling sums or in keeping with the estate of the parent for purposes of amusement, or health, or travel. As said in Bowles v. Winchester, supra: "To establish a contrary rule, would be to deprive the parent of giving and the child from receiving the smallest donation in the way of money for purposes of amusement or pleasure without the child accounting for it in the final distribution of the parent's estate."

Dr. Hill, so far as the evidence shows, did not keep any account against his children for money expended in giving them an ordinary education, or one suited to their station and opportunities in life. The account only begins when money is expended for the purpose of giving his children a professional education, and the potent fact that the father when he commenced expending money in giving them a profesisonal education opened an account and charged the children with the sum so furnished is persuasive, if not conclusive, of the proposition that this money was furnished with a view to a portion or settlement in life. The chief purpose of the statute is to provide for equality in the distribution of estates, and to require children who have received money or property from the ancestor to account for it in the division of the undevised estate, and the court in interpreting this statute has uniformly construed it with a view to carry out this manifest legislative intention. It would be unfair and unjust, and a violation of the spirit of the statute to say that a child who had been furnished with a thousand dollars in money or property must be charged with it as an advancement, whether so intended by the parent or not, and another child who had been given a similar sum to enable him to obtain a professional education ,with a view to a settlement in life should not be required to account for it, although an equal amount had been expended in educating and maintaining each up to the time when they desired to start out for themselves—one in the farm or counting room, the other in a profession. To one child the opportunity of a profesisonal education might be infinitely more valuable than a costlier gift to the other in agricultural or commercial

presents. It may be that some cases will present perplexing questions in the application of this rule; but the chancellor, with all the facts before him, will not find it difficult to determine whether or not the education was afforded by the parent with a view to a settlement in life. It may be safely assumed that when the parent in the discharge of his natural and legal obligations has given to his child an ordinary, or even a college, education, if his means will justify it, makes further advancements to secure him an education that will qualify the child to enter a profession, that they are with a view of a permanent settlement, especially when the parent has manifested, as in this case, that such was his intention. No good reason can be assigned why the child who is equipped with the means and opportunity of obtaining fame and fortune should not be required to stand on an equal footing with his brother, whose tastes and talents will be satisfied with a competency in less prominent and favored employments. To hold otherwise, would be to deny that equality in distribution that the statute contemplates, and work injustice and favoritism where none was intended. We are therefore of the opinion that the chancellor properly charged J. Wallace Hill with the advancement to his father.

The controversy as to the ownership of the Louisville property, and whether or not Rebecca Gailbraith should be charged with the Powell note, presents several complicated question of fact. It appears that Miss Gailbraith, who is a sister of Dr. Hill's wife, and a maiden lady, was deeply interested in the welfare and success of Dr. B. F. Hill, as well as the other children, and that when Dr. B. F. Hill located

in Louisville, for the purpose of practicing his profes-
ssion, the family considered that it would be desirable
to purchase for him a house and lot, with the expecta-
tion on their part and his that he would soon be able
out of his income to pay for the property, and with
this view a house and lot costing $4,000 was purchased
and the deed made to Dr. J. W. Hill and wife and
Miss Gailbraith.    Two thousand dollars of the
purchase money was paid in cash, and notes for
$1,000 due in one year, $500 due in two years, and
$500 due in three years, were executed for the balance
of the purchase money.    It is conceded that Dr. J. W.
Hill, or he and his wife, paid $1,500 of the cash pay-
ment, and that Miss Gailbraith paid the other $500,
and the evidence tends to show that she paid the
$1,000 note.    When the other notes became due, and
the vendor, Mrs. Riley, wanted her money, it was
borrowed from Mary V. Powell upon notes signed by
Dr. J. W. Hill and Miss Gailbraith.    One of these
notes was paid by Miss Gailbraith, the other $500
note, and the one in controversy in this case, was
executed on September 1, 1897, and was a joint note
signed first by Miss Gailbraith, and second by J. W.
Hill, Sr. . Interest to the amount of $180 was paid
on this note by Miss Gailbraith.    There is testimony
indicating that this was the individual note of Miss
Gailbraith, and that it was signed by Dr. J. W. Hill,
as her surety, but Dr. J. W. Hill, Jr., the adminis-
trator of the estate, and his sister, Miss Ada Hill,
both testify positively that the money on this note
was borrowed for the purpose of making up the
$2,000 necessary to pay Dr. J. W. Hill's half of the
purchase price; he having paid the other $1,500 in
cash when the house was purchased, and that it was

the debt of Dr. J. W. Hill, and we are disposed to accept this theory of the transaction, and hold that this note and interest thereon ($180) should be paid by the estate of Dr. J. W. Hill. Entertaining this view, it follows that Miss Gailbraith paid $2,000 of the purchase price, and although the deed conveys the property equally and jointly to Dr. J. W. Hill, his wife, and Miss Gailbraith, and under its express terms Miss Gailbraith would only be entitled to an undivided one-third interest in the property, the evidence is very conclusive that it was understood and recognized by all the parties to the transaction that she was to own or have an undivided one-half interest. It is also very clear that this deed should really be treated as a mortgage, because it was contemplated by the parties at the time of the purchase and when the deed was made that Dr. B. F. Hill would pay the remainder of the purchase price due, and reimburse his father and Miss Gailbraith for the money they had invested in the property, and therefore the chancellor properly adjudged Miss Gailbraith to be the owner of one-half the proceeds realized from the sale of this property. Without going into details, we have reached the conclusion that the chancellor erred in allowing Miss Ada Hill $38.25 on her claim, and in allowing Miss Gailbraith $107.30 on her account of $329. Nothing should have been allowed on either of these claims.

The only remaining question is the charge of $129.33 against Miss Gailbraith and Miss Hill for the rent of the Bardstown house from October, 1903, to May, 1904. It appears that these two ladies remained in the house this short period of time between the death of Dr. J. W. Hill and the sale of the property at the

request of the administrator, and as much for the purpose of taking care of and protecting the property as for any other reason, and the' administrator testifies that it was understood that they should pay $3 a month rent for the house during the time they occupied it.  In view of this understanding and agreement, and the manifest- difficulty there would have been in renting the property to a tenant for so short a period, we think they should be charged $3 per month rent from October 17, 1903, to May 1, 1904.

The judgment of the lower court is reversed, with directions to enter judgments in these two cases in conformity to this opinion; the costs of the appeal in both cases to be paid by the estate.