## OLIVA v. FERNANDEZ.
### No. 2783.

Circuit Court of Appeals, First Circuit.
Dec. 15, 1933.

Henri Brown, of San Juan, P. R., for appellant.

Leonard Wheeler, Jr., of Boston, Mass. (Juan B. Soto, of San Juan, P. R., and Goodwin, Procter & Hoar, of Boston, Mass., on the brief), for appellee.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a judgment of the Supreme Court of Puerto Rico. The appellee is the daughter of the appellant and his wife, Ramona Fernandez Betancourt. They were married in 1893, and the wife died in 1907, when the appellee was about seven years old. After marriage, the wife was bequeathed under her father's will a legacy amounting to $9,944.26, upon which, in the hands of a Puerto Rican firm of Fernandez & Sobrino, there had accumulated interest to the amount of $46.72, or a total of $9,990.98. During their married life they also accumulated a considerable sum of what, under the Puerto Rican Code, is termed ganancial or community property, which, upon the death of either, the other is entitled to one-half.

The prayers of the complaint rendered the

initial proceedings of the nature of a bill in equity to establish a constructive trust, the complaint alleging that there was property belonging to the conjugal partnership amounting to $50,000; that at the time of her marriage the wife received a dowry of $2,070, and that her father at his death left her in his will a legacy equivalent to $11,499.94, and that the husband had control of all the property belonging to the wife, which he invested, together with the ganancial property, in real estate, and has, since the appellee became of age, refused to deliver to her her share of her mother's estate, which the complaint sought to compel him to do.

The appellant, however, filed an answer and also an amended answer to the complaint admitting certain of the allegations and denying that any of the ganancial property was in the form of real estate, or that the wife received any dowry at the time of their marriage. While the appellant admitted in his answer that the ganancial property at her death amounted to $8,498, but that from the ganancial property should be deducted the sum of $1,845.09 paid out by him on a note, for funeral expenses and inheritance taxes, and also admitted that the legacy of his wife from her father amounted, together with accumulated interest in the hands of Fernandez & Sobrino, to $9,990.98, he alleged that from this amount was deducted the sum of $5,520.96, owed by his wife to the firm, but denied in his answer that he ever received any part of the balance of $4,470.02.

As an offset against the appellee's share of the ganancial property, and as grounds of defense, the appellant alleged in his amended answer that during her minority he had spent on her education over $9,000, and since she became of age had paid out for her board and other expenses over $2,000, which exceeded her share of the ganancial property. He, however, stated that he was willing to pay her enough to equal the amount which he paid to her brother, through error, as he says, in settling his share of his mother's estate.

The District Court of San Juan having found that no part of the ganancial property was in the form of real estate in the hands of the defendant, the only remaining issue raised by the answers before him was whether there was anything due the plaintiff as her share of the ganancial property, and whether the defendant received any part of his wife's legacy from her father.

Upon these issues the District Court found that it was not shown that her husband received any part of the legacy of his wife bequeathed to her by her father, that the ganancial property, after deducting the funeral expenses of the wife and certain indebtedness of the conjugal partnership, amounted to only $6,742.84; that the appellee's share was $1,685.71, and that the sum which the appellant had placed at her disposal to equal the sum paid to her brother of $1,276, and the sums paid for her expenses after she became of age, exceeded her share of the ganancial property, and ordered judgment for the defendant.

The plaintiff appealed to the Supreme Court of Puerto Rico, which reversed the judgment of the District Court, and ordered judgment to be entered for the plaintiff for $8,381.20, with interest from the date of the judgment.

From this judgment the defendant appealed to this court and assigned numerous errors, but relies upon two:

(1) The Supreme Court of Puerto Rico decided the case and entered judgment upon a theory and supposed cause of action entirely different and distinct from the theory and cause of action of the complaint and from the theory and cause of action upon which it was tried and decided by the District Court of San Juan.

(2) The findings of fact upon which the judgment appealed from is based are both unsupported by and contrary to the evidence and in part rest upon presumptions unauthorized by law.

We think he should not prevail on the first assignment. It is true that by the prayers of the complaint the plaintiff sought to have the real estate which she alleges to have been purchased from the ganancial property declared to be community property and be conveyed to the judicial administrator of the estate. This claim was not sustained by either the District or Supreme Court of Puerto Rico, but the amended answer clearly raised the issue of whether the defendant now has any funds in his hands belonging to the plaintiff, and the District Court fully heard and also decided the case on that issue. We do not think that the cases of Morales v. Velez (C. C. A.) 18 F.(2d) 519, and Storm Waterproofing Corporation v. L. Sonneborn Sons, Inc. (D. C.) 28 F.(2d) 115, militate against granting the plaintiff the relief accorded her by the Supreme Court. Upon the facts found by both the District Court and the Supreme Court in the first case, the plaintiff was not entitled to any relief whatsoever; and the second case was not brought under a code similar to that of Puerto Rico.

340

The Revised Statutes and Codes of Puerto Rico (1913 Ed.) provide (section 1141):

"Section 1. That the Supreme Court of Porto Rico shall hereafter be a court of appeals and not a court of cassation. In its deliberations and decisions, in all cases, civil or criminal, said court shall not be confined to the errors in procedure or of law only, as they are pointed out, alleged or saved by the respective parties to the suit, or as set forth in their briefs and exceptions, but in furtherance of justice, the court may also take cognizance of all the facts and proceedings in the case as they appear in the record, and likewise consider the merits thereof, so as to promote justice and right and to prevent injustice and delay."

The following sections of the Puerto Rican Code are also pertinent to issues involved:

Section 5350, Rev. St. and Codes 1913 (Code Civ. Proc. § 306): "When the judgment, order or decree of the court below shall be reversed, the court shall proceed to render such judgment, order or decree as the court below should have rendered. * * *"

Section 5175 (Code Civ. Proc. § 191): "The relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint; but in any other case, the court may grant him any relief consistent with the case made by the complaint and embraced within the issue."

Section 3229 (Civil Code, § 159): "The husband shall be the administrator of the conjugal property, except when stipulated otherwise."

Section 3294 (Civil Code, § 224): "The administration of the property of children under the patria potestas belongs in the first place to the father, and in case of his absence, legal incapacity or death, to the mother."

Section 4416: "By virtue of the conjugal partnership the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, share and share alike, upon the dissolution of the marriage."

Section 4422: "To the conjugal partnership belong:

"1. Property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only.

"2. That obtained by the industry, salaries, or work of the spouses or of either of them.

"3. The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."

Section 4429: "The conjugal partnership shall be liable for:

"1. All the debts and obligations contracted during the marriage by the husband, and also for those contracted by the wife in the cases in which she can legally bind the partnership."

Section 4443: "The net remainder of the partnership property shall be divided, share and share alike, between the husband and the wife, or their respective heirs."

Under codes similar to those of Puerto Rico, the filing of an answer suffices to justify the giving of relief consistent with the complaint and answer and evidence, whether the complaint contains a prayer for general relief or not. Johnson v. Polhemus, 99 Cal. 240, 244–245, 33 P. 908; Donovan v. McDevitt, 36 Mont. 61, 92 P. 49; Lumbermen's Trust Co. v. Town of Ryegate (C. C. A.) 61 F.(2d) 14; Murtha v. Curley, 90 N. Y. 372, 377; Townsend v. Hagar (C. C. A.) 72 F. 949, 952.

In the case of Murtha v. Curley, supra, the court under the New York Code (section 1207), which is the same as section 5175 of the Puerto Rican Revised Statutes and Codes (Code Civ. Proc., § 191), said:

"Even if the prayer for judgment was defective for equitable relief, an answer having been interposed, the plaintiff could have any relief 'consistent with the case made by the complaint, and embraced within the issue.' (Code, § 1207.)

"Under our present system of practice a plaintiff is not to be turned out of court, when an answer had been interposed, because he has prayed for too much or too little, or for wrong relief. * * *

"A court of equity adapts its relief to the exigencies of the case in hand. It may restrain or compel the defendant; it may appoint a receiver or order an accounting; it may compel specific performance, or order the delivery to the plaintiff of specific real or personal property; or it may order a sum of money to be paid to the plaintiff, and give him a personal judgment therefor."

The Supreme Court of Puerto Rico, in arriving at a different result from the District Court, merely followed what it declared to be the law of Puerto Rico and the inferences to be drawn from the evidence, largely documentary. This court cannot say that its inferences and findings were without any sub-

stantial evidence to support them, except in the few instances we shall point out.

The plaintiff testified that the defendant admitted to her after her mother's death he was possessed of $50,000, and offered the evidence of a witness to his will executed in 1912 that the defendant at that time stated that he had received from the mother between $20,000 and $30,000. Much stronger evidence, however, which the explanation of the defendant was entirely inadequate to overcome, was offered in the form of an "open will" duly executed by the defendant in 1907, shortly after his wife's death, and properly admitted by the District Court as a declaration against interest, in which he stated:

"Fourth: That at the time of his marriage with said Mrs. Ramona Fernandez y Betancourt, neither of them had properties of any kind, his said wife having thereafter received nine thousand three hundred dollars which she inherited from her father, which sum the appearing party has administered for her since she brought it into their marriage, and which forms a part of the capital owned at this time by deponent, said capital being undivided since, at the death of his said wife, no division was made."

He also stated in the will that said capital now under administration by the testator amounted to $25,136.

The witness to the will executed in 1912 testified that at that time the defendant stated that he had in his hands $9,000, representing his wife's legacy, and $20,000 of ganancial property. As to the exact amounts witness was not sure, as he was giving testimony as to the statements made fifteen years previous; but in a measure supports the statements by the defendant in the 1907 will, which in turn is supported by his acts in 1911 and 1917.

■ The amount of the ganancial property thus acknowledged by him in his 1907 will was substantially verified by the return of the defendant prepared by his counsel in 1911, especially if the two parcels of real estate are included which counsel for the defendant, in adjusting the inheritance tax, stated in a letter to the Bureau of Taxation that the defendant admitted should be included, and provided certain deductions allowed by the Supreme Court are made. Defendant now claims that computation of the inheritance tax on the amount of $13,318 was the result of error; but he must have known at the time the basis on which it was assessed. He paid the tax, and, when he made a settlement with his son in 1917, he stated in the written acknowledgment of settlement that this was the amount of the son's share in the conjugal property.

At least, we do not think it lies in his mouth now, after all these years, to dispute the correctness of the computations of the inheritance tax in 1911, to which he must then have assented, and upon which he adjusted a settlement with his son in 1917.

The Supreme Court found that to the amount of $13,318, on which the tax was assessed, should be added the amount of a mortgage of $2,000, which it was agreed secured a loan from the ganancial property, and that from the total ganancial property should be deducted the sum of $1,755.16 paid out by the defendant after his wife's death, leaving a balance of $13,562.84 of ganancial property to be divided, one-half to the defendant, and one-fourth each to a son and the plaintiff; the plaintiff's share being $3,390.71. This, we think, was clearly error, as was also the court's finding that the mother's legacy was $9,980.98, as we shall later point out.

■ It is contended by the defendant that he never received the wife's legacy, the correct amount of which, as appears by the statement signed by Fernandez & Sobrino, in whose hands the amount of the legacy had been deposited during the lifetime of the wife's father, was $9,990.98 and not $9,980.98, as the Supreme Court assumed in its computations. The defendant also contends that the statement showed that only $4,470.02 was paid to either him or her in cash.

The District Court in construing this statement held that it did not follow from it that the husband ever received any part of the legacy, notwithstanding he states in his will drawn in 1907 that he had administered the legacy and it constituted a part of the undivided capital he then owned.

The Supreme Court, however, did not so interpret the statement of the firm of Fernandez & Sobrino, in which it was stated that at the time of the payment of the balance of $4,470.02 they had deducted the sum of $5,520.96, representing "advances made to them (obviously referring to the defendant and his wife) on account of a large amount."

We think the interpretation of the Supreme Court cannot be said to be clearly wrong, in view of the statement made by the defendant in his will executed in 1907, that she had received the full sum of the legacy, which sum he had "administered for her since she brought it into their marriage, and which formed a part of the capital owned at this time by deponent"; and, further, that he then

had it in his possession as a part of the undivided capital; and in an open will executed in 1912, which had been mutilated while in the notary's archives, he also admitted that certain properties of his wife were in his possession.

■ As between husband and third parties, satisfactory proof of the management of a wife's separate property by the husband may be required; but as against admissions in a formal document, as a will duly executed before a notary, we think the burden of explanation as to the disposition of her separate property, especially against their children, should fall on the husband once he admits having possession and management.

It is urged that there is no presumption of law that a husband takes possession of his wife's separate property, but his possession of his wife's property in this instance does not follow as a presumption of law, but from his admission in a formal document.

The defendant did not deny on the stand that he received the legacy as stated in his will.

■ The Civil Code of Puerto Rico (Rev. St. and Codes 1913) provides:

Section 4288: "Proof of obligations devolves upon the persons claiming their fulfillment, and that of their extinction upon those opposing it."

Section 3293: "The father and the mother have, with respect to their children not emancipated:

"1. The duty of supporting them, keeping them in their company, educating and instructing them in accordance with their means, and representing them in the exercise of all actions which may redound to the benefit of such children."

Section 3282: "Support also includes the education and instruction of the person supported when he is a minor."

The burden, therefore, under section 4288, was upon the defendant also to prove that he had extinguished his obligations to his daughter to turn over to her, on her arriving at her majority, her share of her mother's estate; but payments to or for children, either minors or adults, are presumed to be gifts and not advances, unless the contrary is made to appear. Storey v. Storey (C. C. A.) 214 F. 973; Betts v. Francis, 30 N. J. Law, 152; Jenning v. Rohde, 99 Minn. 335, 109 N. W. 597; and parents, in sections 3282 and 3283, Rev. St. and Codes 1913 (Civil Code), supra, are especially charged with the support and education of their children during their minority.

In arriving at the amount of the ganancial property in the hands of the defendant in 1926, we think the adjustment of the inheritance tax on his wife's estate in 1911 strongly corroborates the husband's admissions in his wills. In fixing the amount on which the inheritance tax should be based, much correspondence took place between the defendant or his attorney and the Treasurer of Puerto Rico. On May 11, 1911, the defendant made a return as to the value of his wife's estate for taxation purposes as $6,498 in cash and cattle, being, as he states, her share in the conjugal partnership estate, including an undivided one-half of a mortgage of $2,000.

On May 19, 1911, his attorney, who apparently made up the return, informed the treasurer of Puerto Rico of an error, in that the amount of the mortgage was not included.

The defendant introduced a letter written on May 31, 1911, signed by one H. Diaz (apparently his counsel, whose full name was Herminio Diaz Navarro), to the acting treasurer of Puerto Rico, in which he states that the defendant, Jose Sosa Oliva, informed him that the legal capital of his wife "consisted of one half of the properties detailed in receipts numbers 516 of Loiza and 748 and another one in Rio Grande."

On July 5, 1911, the assistant treasurer wrote in reply to a letter from Herminio Diaz Navarro under date of June 19, 1911, but which was not introduced, that, in relation to the inheritance taxes on the estate of Mrs. Ramona Fernandez, the bill for taxes had been correctly made, taking the amounts mentioned in the notice and "rectification made by you in your letter of May 31, 1911," and refers to receipts 516, 748 and 749, which total $13,318, but include the mortgage of $2,000.

The defendant also introduced the assessment of the tax which shows that it was based on the above amount, and that the respective share of the ganancial property of the two children was $3,329.50.

It is, of course, difficult from tax receipts to reconstruct the exact amount in the hands of the defendant belonging to the wife.

■ However, it is clear, we think, from the correspondence between counsel and the treasurer of Puerto Rico, that the sum of $13,318, which was accepted by the defendant as the basis for the computing of the inheritance tax on the ganancial property, included the $2,000 mortgage. The Supreme Court, however, found that from this amount should be deducted the sum of $1,755.16, the amount of

a note paid after her death and her funeral expenses; therefore the share of the plaintiff in the ganancial property would be, one-fourth of the sum of $11,562.84 before the deduction, allowed by section 368 of the Political Code of Puerto Rico (Rev. St. and Codes 1913, § 3075), was made, or $2,890.71. From this, however, the defendant was entitled to have deducted the plaintiff's share of the inheritance tax and fees connected therewith, or $44.97, leaving her share of the ganancial property for which the defendant is accountable as $2,845.74, and not $3,390.71 as found by the Supreme Court.

[redacted] Except for what appear to have been inadvertent or mathematical errors, the findings of fact by the Supreme Court are conclusive on this court, unless without any substantial evidence to support them, and its rulings on local law are also binding unless clearly wrong. Ana Maria Co. v. Quinones, 254 U. S. 245, 41 S. Ct. 110, 65 L. Ed. 246.

We therefore accept the Supreme Court's finding that the father was not entitled to deduct any of the advances he made in paying for her education or for her support while a minor, Puerto Rican Rev. St. and Codes 1913, §§ 3282, 3283. In view of the general rule that such advances are ordinarily regarded as gifts, we cannot say that its finding that there was no evidence that the payments for her support in 1921–1922 were intended as advances from her inheritance was an error of law.

The plaintiff therefore, upon the findings of the Supreme Court, eliminating what we think were inadvertent errors, appears to be entitled to a judgment of $7,841.23.

In view of our conclusions, we think it would result in an unwarranted delay to send the case back for a new trial because the plaintiff claimed too much in her bill of complaint, since a determination of the issues raised by the answers of the defendant required a determination of the plaintiff's share of her mother's estate held by the defendant, and the District Court's judgment, in part, at least, was based on its determination of that issue. Under section 1141 of the Puerto Rican Revised Statutes, supra, and sections 5175 and 5350, supra (Code Civ. Proc.), it is provided that the Supreme Court shall not be confined to the errors in procedure as they are alleged or pointed out in briefs and exceptions, but in furtherance of justice may take cognizance of all the facts and proceedings in the case as they appear in the record and consider the merits thereof, and grant any relief consistent with the case and answer embraced within the issues made out by the complaint; and proceed to render such judgment, order or decree as the court below should have rendered, "so as to promote justice and right and to prevent injustice and delay."

Having tried out the issue of what, if anything, of her mother's legacy and her share of the ganancial property was due the plaintiff from the defendant, as the court said in Townsend v. Hagar, supra: "Under these circumstances, it would be a failure of justice to send the case back for a new trial, by reason of technical defects in the complaint, when defendants have had full opportunity to adduce, and have adduced, on the trial, whatever evidence was available to them as a defense against such cause of action."

However, owing to the errors, inadvertent, no doubt, pointed out in the Supreme Court's finding as to the amount of the inheritance and the ganancial property, the judgment of the Supreme Court must be reversed, with costs of this court, not, however, to include fees of counsel, and the case is remanded for further proceedings not inconsistent with this opinion.

The judgment of the Supreme Court of Puerto Rico is reversed, with costs in this court, and the case is remanded to that court for further proceedings not inconsistent with this opinion.