## WILLIAM FRANCIS MERCIL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37720.    Filed September 30, 1955.

*Curtis C. Goodson*, *Esq.*, and *Joseph J. Dudley*, *Esq.*, for the petitioner.

*Merl B. Peek*, *Esq.*, for the respondent.

1152

OPINION.

TURNER, *Judge:* The only question for decision is whether or not the monthly payments of $100 each made by petitioner to his father in 1946 were payments of interest within the meaning of section 23 (b) of the Internal Revenue Code of 1939. By that section, it is provided that in computing net income, there shall be allowed as deductions

"all interest paid or accrued within the taxable year on indebtedness." It is thus apparent that the existence of an indebtedness upon which interest is paid or accrued is the *sine qua non* of the deduction claimed.

Essential to the existence of an indebtedness is a debtor-creditor status. There must be an unconditional obligation to pay, or, stated otherwise, the amount claimed as the debt must be certainly and in all events payable. *Bercaw* v. *Commissioner*, 165 F. 2d 521, affirming a Memorandum Opinion of this Court; *Gilman* v. *Commissioner*, 53 F. 2d 47, affirming 18 B. T. A. 1277; *Evans Clark*, 18 T. C. 780; *Estate of Carr V. Van Anda*, 12 T. C. 1158, affd. 192 F. 2d 391; *E. J. Ellisberg*, 9 T. C. 463; and *Paul Autenreith*, 41 B. T. A. 319, affd. 115 F. 2d 856.

It is the position of the respondent that there was no unconditional obligation or liability on the part of the petitioner to pay any amount to his father, either as principal of an indebtedness or as interest thereon, and accordingly there was no payment of interest within the meaning of section 23 (b). It is the claim of the petitioner, on the other hand, that it was the intention of the parties at the time his father made the advances to him that he should be obligated to repay the amounts to his father on demand, with interest thereon; that in 1945 such demand was made; that interest had accumulated on the amount of the advances at the rate of 5 per cent; that the monthly payments herein were intended to be and were payments of such interest, and that the payments so made are deductible under section 23 (b).

The transaction herein was not at arm's length, as between strangers, but was between father and son, and being so, it is subject to rigid scrutiny for the purpose of determining its actualities. *Evans Clark, supra; Estate of Carr V. Van Anda, supra;* and *Jacob Grossman,* 9 B. T. A. 643. Furthermore, there is in the law a presumption that money or property transferred by a parent to his child is a gift or advancement, and not a loan. *Jacob Grossman, supra; Storey* v. *Storey,* 214 F. 973; *Jenning* v. *Rohde,* 109 N. W. 597 (Minn.) ; *Stahn* v. *Stahn,* 256 N. W. 137 (Minn.) ; *State* v. *One Oldsmobile Two-Door Sedan,* 35 N. W. 2d 525 (Minn.) ; *Oliva* v. *Fernandez,* 68 F. 2d 338; and *Bankers' Trust Co.* v. *Bank of Rockville Center Trust Co.,* 168 Atl. 733 (N. J.). And in the case last cited, the court said:

> To overcome such presumption of gift from a father to a son, the proof offered to accomplish it must be certain, definite, reliable, and convincing, and leave no reasonable doubt as to the intention of the parties. * * *

As rebutting the above presumption, we do have in the instant case the stated conclusions of both petitioner and his father that petitioner was obligated to repay the said advances, with interest. It is our opinion, however, that the proof of record does not overcome the presumption that the advances were gifts or advancements, and we are not persuaded that there was an intent or agreement between the

petitioner and his father that petitioner was or should become unconditionally liable to repay the moneys advanced to him for his college and medical education, either with or without interest.

We have here a situation where petitioner and his father, after more than 20 years and when conditions and circumstances were drastically changed, were attempting to reconstruct and fill in essential details of conversations and understandings had at a time when they were father and minor son, so as to support the petitioner's claim that an indebtedness was created through his father's financing of his college and medical education. There was no written agreement and no notes or other written evidence of indebtedness, and it is admitted that there was no agreement or understanding, either oral or written, as to the rate of interest it is said was to run. The only writings were the entries on the sheets in the father's ledger, and it appears that on other sheets he had similarly recorded the advances made to his three daughters to cover their college costs, but as to the daughters, it was the father's testimony that no interest had been charged or intended and that he had never anticipated full repayment of the advances themselves. Certainly the keeping of the ledger sheets is in no way persuasive of the conclusion that the expenditures made were loans rather than advancements, since by the very nature of advancements a recording of transfers of money or property by a parent to his children is most desirable. See *Hill* v. *Hill*, 122 Ky. 681, 92 S. W. 924. Similarly, the father's explanation that the petitioner wanted a higher education, and having an older daughter and two younger ones, he did not "feel like giving it to him outright," is likewise in complete harmony with a conclusion that the expenditures were advancements rather than loans. Neither do we feel that the assertion of a minor son that he would at some later time repay his father, with interest, for the cost of the anticipated college and medical training in and of itself necessarily indicates or requires the conclusion that there was an agreement that he was at some future time to become unconditionally liable for repayment of the advances made.

As to the claimed agreement, it was petitioner's testimony that he was obligated to repay the advances, with interest, on demand, whereas it was his father's testimony that petitioner's promise to repay was conditioned on his becoming able to pay, namely, that he was to repay the advances, with interest, "as soon as he could" on demand. Assuming such a conditional promise, there still can be no indebtedness unless or until the condition specified is satisfied. *Evans Clark*, *supra*, and the cases therein cited. While there is in the testimony of both petitioner and his father some statement to the effect that the father did demand repayment, we are not advised as to just how and in what terms the demand was made, and we find no proof directed

to petitioner's ability to repay, when and if demand was made. It is clear, however, that if the demand was for the payment of the principal sum, with interest, we must conclude that it was either ignored as to principal and most of the claimed interest, or that petitioner was still not able to pay, since the amount so paid was only a small fraction of the amount of the advances and the alleged interest thereon.

Aside, however, from such considerations and conjectures, we not only feel that the petitioner, under the cases cited above, has not overcome the presumption that the advances were gifts or advancements and not loans, but on the evidence, we are persuaded that unconditional liability to repay was never intended and that the advances should be regarded at least as advancements, if not gifts. And, while as the result of his father's accident some arrangement or understanding, whether formal or on a for granted basis, may have and possibly did occur between petitioner and his father whereunder the petitioner did pay his father's hospital bill and began the monthly payments herein and the father did make a computation of the claimed interest, such an arrangement and understanding could not then convert the advancements into an indebtedness, it being settled law in Minnesota that an advancement is a gift and where such a gift is "fully executed, a promise by the donee to repay it is without consideration." *Kuhne* v. *Gau*, 138 Minn. 34, 163 N. W. 982, and *Kragnes* v. *Kragnes*, 125 Minn. 115, 145 N. W. 785.

Other facts of record and statements in the testimony of petitioner and his father appear to be in refutation of the claim of indebtedness, while others, standing unexplained, supply some basis for questioning its soundness. The statement of the father that he would never have enforced payment by his son is perfectly normal as between father and son, but is not the normal thing in a debtor-creditor relationship. Also revealing, we think, is petitioner's statement relating to the payments made to and in behalf of his father, which was to the effect that though there were no claim of debt, he still would have paid his father's hospital bill and would have made the monthly payments which followed. Of possible significance, also, is the fact that as shown by the ledger sheet $99.50 of the claimed indebtedness covered the cost of a suit and overcoat for petitioner while he was an intern in St. Mary's Hospital in Duluth and that the date of entry indicated that he received the money from his father on the day before Christmas. Of interest, also, is the fact that a balance was struck on February 11, 1946, at or about the date petitioner was married, and although entered as a debt, it was described by the words "To Bal Date of Marriage." Whether of significance or not, the entry is not further explained in the record here, and there were no further entries until after the petitioner had paid his father's hospital bill and possibly several of the $100 monthly payments.

We are also inclined to the view that most likely the first computation of the alleged interest was not made until on or about March 11, 1946. Attached to the record as maintained by petitioner's father of the payments received and his computations of compound interest as set forth above, is a formal statement purporting to show as of March 11 the principal sum of the advances, $5,164, interest at 5 per cent from December 22, 1927, to August 4, 1945, $5,664, and individual sums as interest for the period from August 4, 1945, to October 1, 1945, and for the months of October, November, and December, as well as credits of $560 paid to the hospital and the $100 payments for October, November, and December. It is quite likely, we think, that this statement prepared by petitioner's father under date of March 11, 1946, could have supplied the basis for the entries made on the ledger sheet, and, if so, could be some further indication that the concept of unconditional liability for the principal sums, carrying with it the claim of interest, did not crystallize until after the father's need arose and sometime after the hospital bill and a number of the monthly payments had been made. Due to the vagaries of the human memory, it is often most difficult, when recalling an occurrence of the past, to avoid and refrain from casting it in the form to which it appears best suited at the time of remembering.

It is our opinion that the petitioner has not made his case, and his claim is accordingly rejected. We express no view as to his right to a dependency credit since that question is not at issue herein.

*Decision will be entered under Rule 50.*