GREENE F. JOHNSON AND CAROLINE L. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 3480-71.
United States Tax Court
T.C. Memo 1973-159; 1973 Tax Ct. Memo LEXIS 130; 32 T.C.M. (CCH) 779; T.C.M. (RIA) 73159; July 23, 1973, Filed Greene F. Johnson, pro se. Dudley W. Taylor, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1968 in the amount of $2,115.12. Petitioners conceded at trial that they were not entitled to an ordinary deduction for certain brokerage expenses. The sole issue remaining for disposition is whether petitioners are entitled to a nonbusiness bad debt deduction 2 under section 166 of the Internal Revenue Code of 1954[1] for the taxable year 1968. The deduction in issue resulted from an indebtedness which was purportedly owed to the petitioners' daughter by a former husband and which was assigned in 1965 by the daughter to petitioner Greene F. Johnson. *131 FINDINGS OF FACT Some of the facts are stipulated; the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, Greene F. Johnson and Caroline L. Johnson, were residents of Atlanta, Georgia, at the time of the filing of the petition herein. Petitioners were residents of New York, New York, during the taxable year 1968. Petitioners filed a joint Federal income tax return for the taxable year 1968 with the North Atlantic Service Center, Andover, Massachusetts. Caroline L. Johnson is a petitioner herein solely by reason of having filed a joint return with her husband. Accordingly, references hereinafter to "petitioner" are to Greene F. Johnson. Petitioner is an attorney and in 1968 was vice-president of Metropolitan Life Insurance Company (Metropolitan). Petitioner in effect acted as a financial adviser for Metropolitan in 1968 in that he exercised an important function in the investment of Metropolitan's available cash resources. 3 Petitioners have a daughter, Caroline, who was born in 1931. Caroline married Gervais Ward McAuliffe (McAuliffe) on March 13, 1965. This was Caroline's third marriage. At the time *132 of Caroline's marriage to McAuliffe, she was living in New York, New York, in the apartment of her ex-husband whom she had divorced in February 1965. Caroline and McAuliffe departed for England immediately after their marriage. Caroline's children from her previous marriages were left in the care of petitioners in New York. Caroline paid her fare and that of her husband to England and provided the funds required for their material support during their stay in England. Caroline and McAuliffe returned to the United States in August 1965. Caroline paid her own fare back to the United States, and McAuliffe's mother sent him the money for his return fare. Caroline and McAuliffe executed a written separation agreement on August 12, 1965. They were later divorced. The separation agreement provided, in pertinent part, as follows: WHEREAS the Husband has contributed nothing to the support of the Wife since the marriage, and WHEREAS the Wife has contributed by way of loans in excess of $4,200.00 toward the maintenance of the marriage and is unable and unwilling to continue such loans; and * * * 5. The Husband concedes that he owns substantially no property * * * 4 *133 6. The Husband hereby unconditionally agrees to pay to the Wife for her full and entire separate support and maintenance the amount of $150 per month, such payments to be made until the death or remarriage of the Wife. The amount of $150 per month has been agreed upon because of the present financial condition of the Husband. * * * 7. The Husband hereby acknowledges that he is indebted to the Wife in the amount of $4,270 which amount he hereby agrees to pay with interest at 6% per annum until paid, in addition to the monthly support payments hereinabove provided for. On August 12, 1965, Caoline assigned to petitioner the indebtedness which McAuliffe purportedly owed her. This purported indebtedness is the same indebtedness that was delineated in paragraph 7 of the separation agreement. Caroline's assignment to petitioner provided as follows: In consideration of the sum of $800, receipt of which is hereby acknowledged and the agreement of Greene F. Johnson to pay the rent on my apartment to be occupied at 515 East 88th Street, New York, New York for one year in an aggregate amount of $4,200, I hereby assign to Greene F. Johnson the indebtedness of $4,270 owed to me by Gervais *134 Ward McAuliffe pursuant to paragraph 7 of the Separation Agreement dated August 12, 1965 together with interest thereon at 6% per annum until paid and, in addition I hereby assign to Greene F. Johnson any other payments to the extent of $730 owed, or to be owed to me, by Gervais Ward McAuliffe pursuant to the terms of said Agreement. Caroline's assignment to petitioner was nonrecourse in that petitioner had no recourse against Caroline in the event McAuliffe defaulted on his obligation. Petitioner made the payments to Caroline that were referred to in the assignment. After the expiration of the time period 5 prescribed in the assignment, petitioner continued to pay Caroline's apartment rent for some time thereafter, and also provided additonal monies for Caroline and her children. Petitioner is prepared to assist Caroline and her children at any time such assistance is required. On August 12, 1965, McAuliffe owned no property and was unemployed. McAuliffe was unemployed during the entire time of his marriage to Caroline. Petitioner ultimately obtained a default judgment against McAuliffe in the amount of $5,002.60. [2] There is no evidence as to when the default judgment *135 was rendered. Subsequent to the rendering of the default judgment, petitioner's attorneys in New York were unsuccessful in their efforts to locate McAuliffe and collect the amount owed petitioner by McAuliffe. At the time of the trial herein, petitioner had not given up hope as to the possibility of collecting the amount owed him by McAuliffe. Caroline's usage of her funds to support and maintain her marraige to McAuliffe constituted a gift by her to McAuliffe. At the time of Caroline's expenditure of these funds, Caroline neither intended nor expected that McAuliffe would repay these amounts to her. 6 Petitioners deducted $5,002.60 as a nonbusiness bad debt on their 1968 Federal income tax return. Respondent disallowed both this deduction and petitioners' claimed ordinary deduction for certain investment expenses for 1968 and increased their taxable income for 1968 to reflect these disallowances. OPINION The sole issue for determination is whether petitioners are entitled to a bad debt *136 deduction for 1968 for an obligation which McAuliffe owed Caroline pursuant to their August 12, 1965, separation agreement and which Caroline subsequently assigned to petitioner on August 12, 1965. Respondent contends that the absence of a bona fide debtor-creditor relationship between McAuliffe and Caroline precludes the existence of a bona fide debtor-creditor relationship between McAuliffe and petitioner. Respondent further contends that even if a bona fide debtor-creditor relationship is assumed to have existed between McAuliffe and petitioner, the obligation was worthless both at the time of its creation and its subsequent assignment to petitioner. We agree with respondent. The initial requisite for sustaining a bad debt deduction under section 166 is proof that a valid debtor-creditor 7 relationship existed. See section 1.166-1(c), Income Tax Regs., [3] and Elizabeth N. Rude, 48 T.C. 165, 171 (1967). *137 Since Caroline's assignment to petitioner was nonrecourse, Caroline was absolved of any personal liability to petitioner in the event McAuliffe defaulted on his purported obligation. Moreover, petitioner, as an assignee, technically stands in the shoes of Caroline, the assignor. Petitioner could thus acquire no greater rights against McAuliffe than those possessed by Caroline. See Williston on Contracts, Third Edition, section 432, pages 182-183 (1960). Accordingly a debtor-creditor relationship between McAuliffe and petitioner is contingent upon the initial existence of such a relationship between McAuliffe and Caroline. Intrafamily transactions such as Caroline's expenditure of her funds to support and maintain her ephemeral marriage to McAuliffe are subject to careful analysis and are presumed to constitute a gift rather than a valid loan. See Elizabeth N. Rude, supra at 172; William Francis Mercil, 24 T.C. 1150 (1955); Evans Clark, 18 T.C. 780 (1952); Estate of Carr V. 8 Van Anda, 12 T.C. 1158 (1940), affd. per curiam 192 F.2d 391 (C.A. 2, 1951); and Jacob Grossman, 9 B.T.A. 643 (1927). *138 We are convinced that at the actual time of the usage of her money by Caroline for the support of McAuliffe and herself, Caroline neither intended nor expected that McAuliffe would repay these amounts. The record is devoid of any evidence that McAuliffe executed either a promissory note or other evidence of indebtedness with respect to the funds in issue. Moreover, Caroline was fully aware that McAuliffe had no property of his own, that he was unemployed both at the time of, and during, their marriage, and that his job future was at best highly insecure. With these facts in mind, and due to the absence of any persuasive evidence to the contrary in the record, [4] we can only conclude that petitioner has not rebutted the presumption that Caroline's usage of her funds for the support and maintenance of her marriage to McAuliffe constituted gifts, and not loans, to McAuliffe. Accordingly, the mere fact that Caroline expended monies for the support of McAuliffe and herself does not per se justify the existence of a bona fide debtor-creditor relationship between McAuliffe and Caroline. See Armand P. Bartos, 27 T.C. 1002 (1957). *139 9 The only remaining question is whether the inclusion of paragraph 7 in the separation agreement executed by McAuliffe and Caroline on August 12, 1965, created a bona fide debtor-creditor relationship between McAuliffe and Caroline for purposes of section 166. We recognize that McAuliffe's obligation emanating from paragraph 7 of the separation agreement was considered by a New York State court to represent a sufficient basis for granting petitioner (pursuant to his assignment from Caroline) a default judgment against McAuliffe. However, the mere fact that the obligation may have been legally enforceable does not automatically entitle petitioner to a section 166 bad debt deduction. See Estate of Carr V. Van Anda, supra at 1162. Specifically, a legally enforceable obligation is not deductible under section 166 if the obligation is worthless at the time of creation or acquisition. See Eckert v. Burnet, 283 U.S. 140 (1931); and Ray Crowder, 19 T.C. 329 (1952). We are persuaded that regardless of whether paragraph 7 of the separation agreement created a bona fide obligation, this obligation was worthless both at the time of its creation and at the time *140 of its subsequent acquisition by petitioner. Caroline was certainly apprised of McAuliffe's poor financial condition. She knew that he had no property and was unemployed at the time of their divorce. Furthermore, she had no basis for assuming that his job instability would improve at any time in the future. Thus, we have concluded that any 10 obligation owed by McAuliffe to Caroline as a result of paragraph 7 of the separation agreement was worthless as of its inception. Finally, petitioner, as a result of information received from Caroline and other socially prominent friends was cognizant of McAuliffe's irresponsibility as reflected by McAuliffe's job instability and his willingness to be supported by his wife's resources. Petitioner also was aware that McAuliffe was unable to pay his return fare to the United States from England and that he acquired the necessary funds for the return fare only be requesting assistance from his mother. In light of these facts and the additional fact that petitioner had no concrete basis for assuming that McAuliffe's mother would satisfy any or all of his liabilities, we are persuaded that petitioner, as an attorney and financial adviser *141 to Metropolitan, realized clearly that the assigned obligation was worthless from the moment of his acquisition of it from Caroline. We are further persuaded that, since both the separation agreement and the assignment were executed on August 12, 1965, the obligation from McAuliffe to Caroline contained in paragraph 7 of the separation agreement was created specifically for acquisition by petitioner in an attempt to convert the monies transferred by petitioner as gifts to, or on behalf of, Caroline and her children into deductible bad debts. Therefore, we hold that petitioner volitionally acquired an obligation that 11 was worthless as of its acquisition. Accordingly, petitioner is not entitled to a bad debt deduction under section 166. See Ray Crowder, supra, at 335. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954. ↩
2. Although the record is unclear in this regard, the $5,002.60 apparently represented $4,270 of principal amount and $732.60 of interest accumulated from August 12, 1965. ↩
3. Sec. 1.166-1(c), Income Tax Regs., provides, in pertinent part, as follows: (c) Bona fide debt required. Only a bona fide debt qualififes for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * * ↩
4. Although petitioner hinted to this effect at trial, there is no concrete evidence in the record that McAuliffe's mother could be conclusively relied upon to satisfy McAuliffe's obligations. The fact that she did send money to him to enable him to return to the United States from England is no basis for inferring that she would necessarily pay his debts to third parties. ↩