ESTATE OF ANDREW E. DAUER, LEON N. THURMAN, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Dauer v. Commissioner
Docket No. 5704-77.
United States Tax Court
T.C. Memo 1979-385; 1979 Tax Ct. Memo LEXIS 140; 39 T.C.M. (CCH) 191; T.C.M. (RIA) 79385; September 19, 1979, Filed Irwin Zemen, for the petitioner. Barry C. Feldman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge James M. Gussis pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court. [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GUSSIS, Special Trial Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $16,338.18. The issue which remains in dispute here is whether the respondent correctly disallowed a deduction from the gross estate under section 2053(a)(3), Internal Revenue Code of 1954, [2] as a claim against the estate in the amount of $53,000. *142 FINDINGS OF FACT Some of the facts have been stipulated and they are found accordingly. Decedent, Andrew Dauer, died on October 14, 1973, in Lima, Peru, from injuries sustained in a traffic accident. Decedent's place of domicile at the time of his death was New York, New York. Leon N. Thurman, the decedent's step-father and the administrator of the estate, was a resident of New Rochelle, New York, when the petition was filed herein. In or about 1963 decedent was enrolled at Pennsylvania Military College which he attended for four years. The tuition was paid by Mr. Thurman from the proceeds of an educational bank loan of approximately $11,000 and from his own funds. Upon graduation, decedent was employed by a public accounting firm for one year (during which time he lived at home) and then left for military service of two years. Upon completing his military service decedent returned to his job as an accountant with the public accounting firm and continued to be employed by the firm until the date of his death in 1973. Decedent's starting annual salary with the public accounting firm was approximately $8,000 and, at the time of his death, his annual salary had reached *143 $20,000. At some time prior to 1972 a civil action for damages was brought by a police officer against decedent in the Supreme Court, Queens County, New York. As a result of a settlement reached by the parties, decedent made a payment of $3,500 to plaintiff's representative and the action was dismissed. Under Schedule D of the estate tax return, the proceeds of three insurance policies on decedent's life are listed in the total amount of $194,000. These proceeds represented the bulk of decedent's estate. Petitioner claimed debts of the decedent in Schedule K of the estate tax return in the total amount of $53,000. Respondent determined that such debt had not been substantiated as legally enforceable loans and hence were not allowable as deductions from the gross estate under section 2053. OPINION Section 2053(a)(3) allows a deduction for claims against the estate in computing the taxable estate. Petitioner contends that the amount of $53,000 deducted in Schedule K of the estate tax return represents loans made by Leon N. Thurman to decedent between the years 1963 and 1973 for such items as college tuition and, later, personal expenses. To prevail, petitioner must *144 establish that a bona fide loan existed. Section 2053(c)(1)(A). Petitioner has the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The bona fides of a loan are primarily established by the intention of the parties. [3] In Mercil v. Commissioner,24 T.C. 1150, 1153 (1955) this Court stated: "Essential to the existence of an indebtedness is a debtor-creditor status. There must be an unconditional obligatin to pay, or, stated otherwise, the amount claimed as a debt must be certainly and in all events payable." We are not persuaded on this record that a bona fide indebtedness existed. No formal evidence of indebtedness was ever executed between decedent and his step-father. Nor does the record contain persuasive evidence of any understanding that the advances were made with any expectation of repayment. None of the customary indicia of a valid debt is present, e.g., interest or a repayment schedule. The step-father's testimony strongly suggests that payments for decedent's college tuition and personal needs were prompted by considerations of filial duty. Moreover, it does not appear *145 that decedent made any regular effort to repay these advances after he found employment as an accountant at an annual salary that reached $20,000 in 1973. This would indicte the absence of any real intent that repayment was ever seriously contemplated. Finally, the testimony of the step-father that decedent was grateful for his step-father's efforts and would repay him "when he had the opportunity" or "when the time comes" simply does not establish the existance of the requisite unconditional obligation to pay. See Mercil v. Commissioner,supra.
We also have serious doubts that the amount of such indebtedness, if it in fact existed, would actually be $53,000. Certainly the record does not support such a total. We note that petitioner simply listed weekly average advances made by the step-father to decedent over the years 1966 to 1973. These weekly averages, which *146 are perfunctorily listed in round figures, range from $50 a week to $150 a week and they amount to a total of $38,000 over the 1966-1973 period. During most of this period, except for the period of his military service, decedent was gainfully employed with a nationally-known public accounting firm and there is no plausible explanation in the record as to the need for such sizeable advances during this period of years up to 1973. With respect to the tuition payments of some $11,000 made over a period from 1963 to 1967, respondent contends that any debt arising from such advances would be barred by the six year period of limitations in the State of New York (N.Y. Civil Practice § 213 (McKinney, 1972)) and hence not allowable as a deduction under section 2053(a)(3). See Estate of Lewis v. Commissioner,49 T.C. 684, 687 (1968). Since we have concluded that in any event no bona fide indebtedness existed, we see no useful purpose in considering this argument. We conclude on the basis of the entire record that a bona fide indebtedness did not exist in any amount and that consequently the petitioner is not entitled to a deduction under section 2053(a)(3) for claims *147 against the estate. Decision will be entered for the respondent.
Footnotes
1. Pursuant to General Order No. 6 the post-trial procedures set forth in Rule 182 of this Court's Rules of Practice and Procedure are not applicable to this case.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. The intra-family transaction herein was obviously not at arm's length and consequently is subject to close scrutiny for the purpose of determining its actualities. See Clark v. Commissioner,18 T.C. 780 (1952), affd per curiam 205 F.2d 353↩ (2nd Cir. 1953).