Estate of J. F. Ames, Deceased, Evelyn H. Ames, Executrix v. Commissioner.
Estate of J. F. Ames v. Commissioner
Docket No. 1294.
United States Tax Court
1946 Tax Ct. Memo LEXIS 267; 5 T.C.M. (CCH) 73; T.C.M. (RIA) 46036; February 7, 1946
*267 Debt from son to father which became worthless in 1939 allowed as deduction from father's income for that year. Section 23 (k) (1) I.R.C. of 1939, as amended. Ormond Somerville, Esq., John W. Lapsley, Esq., and Henry J. Pratt, C.P.A., for the petitioner. Edward L. Potter, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined a deficiency of $8,462.38 in the income tax liability of J. F. Ames, deceased, for the calendar year 1939. The deficiency arises from several adjustments made by respondent in J. F. Ames' reported tax liability for that year, some of which are not in controversy. The sole question is whether respondent erred in disallowing a deduction in the amount of $69,620.08 as a debt claimed by the decedent in his return to have become worthless in 1939. Findings of Fact On January 24, 1941, the petitioner, Evelyn H. Ames, was duly appointed and is now the executrix of the estate of J. F. Ames, deceased, who died in January 1941 at the age of 72 years and while a resident of Selma, Alabama. The decedent filed his income tax return for the year 1939 with the collector for the eighteenth district of Ohio. *268 For may years prior to his death, J. F. Ames was president and owned all of the stock, except qualifying shares, of the Ames Bag Machine Company, located at Cleveland, Ohio, and, as sole proprietor, he owned and operated the Selma Manufacturing Company, located at Selma, Alabama. Both of those concerns manufactured various types of cotton bags as containers for salt, sugar, flour, cement, fertilizer, mail-bags, etc. Each of the concerns maintained separate books of accounts and monthly and annual financial statements as to each were made to J. F. Ames. Also an annual consolidated financial statement was prepared to reflect J. F. Ames' net worth as to all of his business enterprises. Separate and apart from the above mentioned books of accounts J. F. Ames maintained a personal book of accounts designated as the "Cleveland-Selma" books. Over a period of years, the gross business of the two cotton bag manufacturing concerns was in excess of $500,000 per annum for the Cleveland plant and in excess of $1,000,000 per annum for the Selma concern. M. P. Ames, son of J. F. Ames, was continuously employed in his father's business from 1917 until his sudden death in 1938. He was an able *269 executive and administrator and for many years prior to his death he was the general manager of both the Cleveland and the Selma concerns. Subject to his father's approval on some important matters, he directed the business and issued general orders for the operation of both concerns. He purchased the cloth required in the manufacture of bags, fixed the sales prices and made the sales contracts for the products of the two plants. As the sole salesman, he contacted the customers personally by letter, telegraph, and telephone. He traveled a great deal between the two bag plants and also covered the sales territory from time to time. His residence in Selma was directly behind that of his father and they occupied adjoining offices at the Selma plant. Father and son worked in close cooperation. As compensation for services, as above stated to have been rendered, M. P. Ames received a fixed monthly salary and also, at the end of each year, beginning with 1925, he received 10 per cent of the net profits of both the Ames Bag Machine Company and the Selma Manufacturing Company. At least from 1931, the salary received by him was $400 per month. During the period from 1917 to July 1938 J. *270 F. Ames maintained on his personal "Cleveland-Selma" books an open account designated "M. P. Ames Personal Account" which reflected the personal account between father and son. That account itemized the son's debits and credits and also showed his debit or credit balance at the end of each calendar year. The debit entries covered cash advances made by J. F. Ames to his son and a great variety of payments, made by J. F. Ames on behalf of his son, to numerous stores, business concerns, life insurance companies, clubs, landlords, tax collectors, hospitals, banks, etc. The credit entries consisted of repayments made by M. P. Ames out of funds derived from his salary and percentage of the net profits of the two cotton bag manufacturing concerns, as well as out of life insurance dividends and other sources. A summary of the "M. P. Ames Personal Account" with J. F. Ames from 1917 to July 20, 1938 shows the following figures: Annual
Balance End of Period
Year
Debits
Credits
Debit
Credit
1917
0
$ 1,620.00
0
$1,620.00
1918
$ 339.53
1,620.00
0
2,900.47
1919
495.65
3,320.00
0
5,724.82
1920
5,083.77
2,200.00
0
2,841.05
1921
3,387.75
4,345.95
0
3,799.25
1922
8,234.48
6,237.50
0
1,802.27
1923
6,795.97
4,388.37
$ 605.33
0
1924
4,252.41
513.11
4,344.63
0
1925
5,478.80
1,903.46
7,919.97
0
1926
3,619.14
4,622.12
6,916.99
0
1927
12,900.51
22,029.45
0
2,211.95
1928
11,591.18
5,684.48
3,694.75
0
1929
8,991.74
5,989.98
6,696.51
0
1930
10,945.14
5,782.11
11,859.54
0
1931
10,538.37
4,443.12
17,954.79
0
1932
10,816.57
2,454.19
26,317.17
0
1933
8,624.48
3,194.88
31,746.77
0
1934
10,756.39
2,819.62
39,683.54
0
1935
10,520.25
4,694.60
45,509.19
0
1936
12,165.14
240.00
57,434.33
0
1937
10,976.31
22.00
68,388.64
0
Jan. 1, 1938-Jul. 20, 1938
4,921.83
0
73,310.47
0
*271 In connection with maintaining a line of credit with and securing loans from the City National Bank in Selma, Alabama, and with other banks, J. F. Ames submitted certified statements of his resources and liabilities and the accounts receivable shown thereon as resources included the debit balances due from M. P. Ames at the particular times such statements were made. At various times during the 1930's J. F. Ames and M. P. Ames had conversations in which the father protested that the son's indebtedness to the father as shown on the "Cleveland-Selma" books was getting too large and must be reduced, and that he must resign from several clubs in order to lessen his expenses. In February 1935 while M. P. Ames was in Selma and J. F. Ames was in Cleveland and in response to a letter from his father, the son, after stating that his mother was in good health, wrote the father that he would take prompt steps to obtain a statement of the amount of his indebtedness to his father as of the end of 1934; that, as per the father's request, he was making arrangements to resign promptly from various clubs; and that he would endeavor to hold down his expenses. In his letter the son also stated that *272 "We are going through such a terrible period" accompanied by many worries. The effect of the depression during the 1930's resulted in reduced earnings for the Cleveland and Selma concerns and as a necessary consequence reduced the earnings of M. P. Ames which were based on 10 per cent of the profits of those concerns. J. F. Ames, his son, and also his plant superintendents and accountants understood and treated M. P. Ames' debit balance in the "Cleveland-Selma" books as a debt of the son to his father. M. P. Ames died July 20, 1938, at the age of 44, following an operation. His estate was administered in the Probate Court of Dallas County, Alabama, and his widow, Evelyn Brewer Ames, was duly appointed executrix thereof on August 6, 1938. On January 31, 1939, J. F. Ames individually and as sole owner of the Selma Manufacturing Company filed, in the proceedings in the probate court, a claim (the correctness of which was sworn to) against the estate of M. P. Ames in the sum of $77,999.83 as "the amount due said J. F. Ames by the said estate * * * for various money loaned or advanced to the said Mortimer P. Ames by the said J. F. Ames" during M. P. Ames' lifetime. That claim in the *273 sum of $77,999.83 embraced the amount of $73,310.47 representing M. P. Ames' debit balance, at date of his death, as shown on J. F. Ames' personal "Cleveland-Selma" books. The remaining $4,689.36 of such claim apparently represented an amount claimed to be due from M. P. Ames to the Selma Manufacturing Company. On January 31, 1939, J. F. Ames, individually, filed a second claim against the estate of M. P. Ames, deceased, in the sum of $4,769.51, as assignee and owner of various claims theretofore filed against that estate by other claimants and purchased from such claimants by J. F. Ames. In the final uncontested settlement of the estate of M. P. Ames, deceased, on November 7, 1939, the probate court approved the executrix's final accounting showing total receipts of $16,386.51 and disbursements in the same amount of which $13,099.26, representing all the assets applicable to the payment of claims was disbursed as payment on the claims of J. F. Ames and the Selma Manufacturing Company. The court determined that the claims of J. F. Ames and the Selma Manufacturing Company totaling $82,769.34 ($77,999.83 plus $4,769.51) were "legal charges and valid claims against said estate"; that *274 the estate was hopelessly insolvent; and upon consent of the sole creditor, J. F. Ames and J. F. Ames doing business as Selma Manufacturing Company, the court declared the estate closed and finally settled. The payment of $13,099.26 by the estate represented.158262 cents on the dollar of the total claims approved by the court. After the final settlement of M. P. Ames' estate in 1939, J. F. Ames charged off his unpaid claim against that estate in the amount of $69,670.08 as a worthless debt. He took a deduction therefor on his income tax return for the year ended December 31, 1939. In the deficiency notice the respondent disallowed the amount of $69,620.08 as a claimed worthless debt. M. P. Ames, deceased, at the time of his death in July 1938, was indebted to his father, J. F. Ames, in the amount of $73,310.47, as shown by the "Cleveland-Selma" books and upon the final settlement of the son's estate in 1939 the unpaid portion of such debt in the amount of $61,708.20 became a worthless debt. Opinion TYSON, Judge: The respondent's determination discloses his disallowance of the amount of $69,620.08 as a claimed worthless debt deduction. The sole question is whether the advances *275 from father to son constituted gifts, as contended by respondent, or, as contended by petitioner, whether they constituted an indebtedness of the son to the father, within the meaning of section 23 (k) (1) of the Internal Revenue Code of 1939, as amended by section 124 (a) of the Revenue Act of 1942, to read: "(k) Bad Debts. - (1) General Rule. - Debts which become worthless within the taxable year; * * *". Section 124 (d) of the 1942 Act made this amendment effective with respect to taxable years beginning after December 1938. The facts show: that on the "M. P. Ames Personal Account" contained on the "Cleveland-Selma" books there were various debits and credits covering the period from January 1, 1917 to July 1938, and the debit or credit balance at the end of each year; that the debits covered a great variety of items, including cash advances, rents, club dues, etc; that the credit entries represented payments on that account by M. P. Ames out of funds derived by him from his salary, his percentage of net profits from the Cleveland and Selma businesses and from other sources; that at the end of 1927 the account shows that M. P. Ames had been credited with payments from these sources *276 in the total amount of approximately $53,000 and then had a credit remaining on the account of $2,211.95; that, thereafter, from 1928 through 1937 he made repayments from the same sources as theretofore for which he received credits on the account, but not in sufficient amounts to offset the debits; that J. F. Ames in discussions of the account with his son stated that the account must be reduced; that at the father's request the son promised in February of 1935 to resign from various clubs and hold down all of his expenses; that J. F. Ames, his son, and the plant superintendents and accountants understood and treated M. P. Ames' balance in the "Cleveland-Selma" books as a debt from the son to his father; that J. F. Ames, in making certified statements to banks for the purpose of maintaining a line of credit always included, as accounts receivable, the debit balances of M. P. Ames' account at the time such statements were filed with the banks; and that J. F. Ames filed with the probate court a sworn statement of a claim against the estate of M. P. Ames, which embraced the amounts shown on the "Cleveland-Selma" books. We think these enumerated facts establish conclusively that the $73,310.47 *277 shown in the "M. P. Ames Personal Account" constituted an indebtedness of M. P. Ames to J. F. Ames at the time of the former's death, and we have so found as a fact. In passing, it may be said that we think, under the circumstances of this case, that the advances of J. F. Ames to his son were made with a reasonable expectation on the part of J. F. Ames at the time that they would be repaid. Cf. Charles H. Sooy, 10 B.T.A. 493, affd. 40 Fed. (2d) 634. Those circumstances are: that the son was in the prime of life for several years prior to and at the time of his death; that he was an able executive and administrator; that he was general manager of the Cleveland and Selma businesses; that he was, since at least 1931, receiving a salary of $400 per month and 10 per cent of the net profits of the two businesses, which did an annual volume of business exceeding $1,500,000; that he had, during the eleven years 1917 to and including 1927, been credited on his account for amounts approximating $53,000; and that he made substantial payments on the account in succeeding years which embraced the period of the depression. In reaching our conclusion that the $73,310.47 *278 constituted an indebtedness of M. P. Ames to his father, we do not ignore the contention of respondent in his brief, relying on Jacob Grossman, 9 B.T.A. 643, that financial dealings between persons bound by close family ties must be scrutinized closely and that advances by a father to a child may commonly evidence gifts rather than loans. Nevertheless where, as here, the circumstances clearly indicate that a loan rather than a gift was contemplated by the parties, the fact that close family relationship exists becomes unimportant and the claimed bad debt deduction is to be allowed. Cf. D. W. Pierce, 41 B.T.A. 1261; Elizabeth N. C. Hetherington, 20 B.T.A. 806. Upon final settlement of the son's estate, J. F. Ames and J. F. Ames doing business as Selma Manufacturing Company received payment of.158262 cents on the dollar of his claims filed against the estate. Accordingly, on account of the debit balance of $73,310.47 on the "Cleveland-Selma" books, J. F. Ames received payment of $11,602.27 and the balance of the claim, based on such debit balance, or the amount of $61,708.20, became a worthless debt in November 1939. Such worthless debt constitutes *279 an allowable deduction from the gross income of J. F. Ames, deceased, for the year 1939. Cf. D. W. Pierce, supra, and Lena P. Wheeler, 40 B.T.A. 92. No deduction is allowed herein on account of the two items of $4,689.36 and $4,769.51, respectively, because of insufficient proof, despite the fact that the probate court, in an uncontested proceeding, found them to be just and valid claims against the son's estate and approved payment thereof to the extent of.158262 cents on the dollar. The item of $4,689.36 was embraced in the claim totaling $77,999.83 filed by J. F. Ames and the Selma Manufacturing Company against the son's estate, and apparently represented an amount claimed to be due from M. P. Ames to the Selma Manufacturing Company, but such may not be assumed to be the fact, and, further, there is no evidence to show what gave rise to such claimed indebtedness. The item of $4,769.51 represents the claim in that amount filed against the son's estate by J. F. Ames as assignee and owner of various claims theretofore filed by other claimants. Apparently those claims were purchased by J. F. Ames at some time during the administration of the estate and prior *280 to January 31, 1939, and although the ultimate value thereof was not determinable until the son's estate was closed, J. F. Ames no doubt knew, at the time of the purchase, that they were at least partially worthless. Furthermore, there is no evidence as to the character of such claims or what J. F. Ames paid for them. Decision will be entered under Rule 50.