JEAN A. CROTTY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crotty v. Commissioner
Docket No. 32130-88
United States Tax Court
T.C. Memo 1990-261; 1990 Tax Ct. Memo LEXIS 280; 59 T.C.M. (CCH) 691; T.C.M. (RIA) 90261; May 29, 1990, Filed *280 Decision will be entered under Rule 155. Jean A. Crotty, per se. Mark J. Miller, for the respondent. GALLOWAY
*951 MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1954[1] and rules 180, 181, and 182. Respondent determined a deficiency in petitioner's Federal income tax for 1985 in the amount of $ 890. The issues to be decided are as follows: (1) whether sums advanced by petitioner for the benefit of her son were deductible as nonbusiness bad debts pursuant to section 166(d) or whether such sums were in reality gifts and therefore not deductible; and (2) whether petitioner is entitled to a deduction for losses incurred on a townhouse which she rented to her daughter and son. Both issues are strictly factual. In order to facilitate our disposition of these issues, we will combine our findings of fact and opinion as to each. Some of the facts have been stipulated by the parties and are so found. *281 The stipulation of facts and related exhibits are incorporated by this reference. Petitioner resided in New Berlin, Wisconsin, at the time her petition was filed. Petitioner filed a Federal income tax return for the year in *952 issue with the Internal Revenue Service in Kansas City, Missouri. Issue 1. Nonbusiness Bad Debt Loss
On Schedule D (Capital Gains and Losses) attached to her 1985 income tax return, petitioner claimed a capital loss carryover of $ 3,000 resulting from a loan allegedly made in 1984, which she described as follows: "Loan - Bad Debt - More to be carried over in future years." (Petitioner had deducted a loss of $ 3,000 with a similar description on her 1984 tax return). The "loans" were advanced to petitioner's 22-year-old son, John P. Crotty IV (John). On a "worksheet" submitted at trial, petitioner disclosed the following bad debt loss allegedly resulting from advances to John: First alleged loan
April 19, 1983 cash advance
$ 15,500.00
Repayments by John in 1983
$  4,150.56
Amount designated by petitioner
as interest
260.00
3,890.56
11,609.44
December 1983 Christmas Gift to John
500.00
Total
$ 11,109.44
Second alleged loan
December 16, 1983 advance
$ 15,000  December 22, 1983 repayment
[15,000] January 4, 1984 advance
11,000  January 9, 1984 advance
20,000  February 24, 1984 repayment
[20,000] Total
$ 11,000  Summary
First alleged loan
$ 11,109.44
Second alleged loan 11,000.00
Total
$ 22,109.44
*282 Petitioner recorded John's 1983 and 1984 repayments on her worksheet. In 1983, petitioner's worksheet disclosed three repayments from John which included interest totaling $ 195.27. Elsewhere on the worksheet, petitioner recorded that John paid interest in 1983 and 1984 in the respective amounts of $ 260 and $ 650. Respondent disallowed the claimed loss as not qualifying for deduction under any provision of the Internal Revenue Code. Respondent contends that no deduction is allowable because the purported loans did not result in a bona fide debt and that, even if there as a debt, it did not become worthless in 1984 or 1985. Petitioner bears the burden of proving respondent's determination is erroneous. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142(a). On April 19, 1983, petitioner advanced $ 15,500 to John to purchase a new automobile. However, instead of a new automobile, John purchased a used 1981 Chevrolet for $ 7,200, a motorcycle for $ 2,400, and a boat for $ 4,500, a total of $ 14,100. These assets were sold in the fall of 1983 for approximately $ 13,500. John then bought a 1977 automobile for $ 700. Before advancing the money to John, petitioner did not ask her son *283 for any collateral, security, or financial statement. In return for the money provided, John executed a document, which he had prepared. This document reads as follows: Loan Agreement $ 15,500.00
April 19, 1983
I, John P. Crotty IV, am borrowing a principal sum of fifteen thousand five hundred dollars ($ 15,500.00) from Jean A. Crotty. I, John P. Crotty IV, promise to pay interest on the principal, of not less than 8% and not greater than 20% per annum, the actual rate to be determined by Jean A. Crotty on a monthly basis and paid by me by the first of each month. Payments against the principal are to be made in whatever amount and whatever time I deem appropriate. I also promise to pay Jean A. Crotty the total principal within 30 days of her written request. S/Keith Rupple Witness
John Crotty
The $ 15,500 paid to John was withdrawn from petitioner's savings account at the Waukesha State Bank. Petitioner had received the *953 funds in this savings account from the estate of her husband who had died in December 1982. Petitioner was the personal representative of her husband's estate. Petitioner's account balance at the time of the withdrawal was $ 272,412.96. Petitioner was about 56 years *284 of age when she was widowed in 1982. This emotionally upsetting experience was all the more difficult for petitioner since her husband handled all business and tax matters. As petitioner testified, "I hadn't done taxes, I was not involved at all when my husband was alive that had anything to do with my taxes or my bills * * *. I had never had a checking account and I didn't even know how to make out a check." Personal considerations were foremost in petitioner's mind when she advanced $ 15,500 to John in April 1983. On cross-examination, petitioner was asked if she gave John the money because he was going through a difficult time because of his father's death. Petitioner replied:
I loaned him this money because I was going through such a difficult time, and they -- my children -- knew this and I thought that if he could have bought some of these things then it might have gotten his mind off the fact that I was so affected by what had happened. During 1982 and part of 1983, John was employed full-time in electronics with Johnson Controls, Inc. in Milwaukee, Wisconsin. He quit his job in June 1983 and went to work as a commodities broker from June 1983 until early 1984. John invested *285 his personal savings and proceeds from the sale of the automobile, motorcycle, and boat in the futures options of the commodities markets in Chicago, Illinois. At John's request, petitioner on December 16, 1983, and January 4 and 9, 1984 wired funds of $ 15,000, $ 11,000, and $ 20,000, respectively, totaling $ 46,000 to John's brokerage account with Weinberg Brothers & Company in Chicago, Illinois. These advances, withdrawn from petitioner's savings account, were applied to John's commodities margin calls. No formal agreement was executed for these three transfers, although John signed a handwritten note on the date of the final transfer, which states: "As of January 9, 1984, I owe Jean A. Crotty $ 47,500 - Payable on Demand." Neither petitioner nor John could explain how petitioner determined that $ 47,500 was the amount John owed when he executed the form on January 9, ;1984, acknowledging his liability from the three advances totaling $ 46,000. Furthermore, John testified that he "knew it wasn't quite correct," but he signed the note since he needed the money immediately to cover a margin call. In May 1984, John discontinued his commodities trading activity after sustaining claimed *286 losses of $ 30,000, at which time had had approximately $ 1,800 remaining in his commodities account. During the remainder of 1984, John stated he was unemployed. Since 1985, he has been engaged in restoring and selling foreclosure properties purchased at sheriff's sales. Petitioner has co-signed bank loans for her son's purchases of foreclosed properties in 1985 and later years. John testified that petitioner co-signed one foreclosure loan in 1985 for $ 12,000. John filed tax returns for 1983 and 1985, but not for 1984. John's 1983, 1984, and 1985 tax years were audited by respondent's employees and deficiencies were determined in all three years. After John filed petitions with this Court, decisions were entered by the Court pursuant to settlements stipulated by the parties. As a result of the settlements, John Crotty's tax liabilities for the respective years 1983, 1984, and 1985 were increased from $ 939, zero, and $ 130 to $ 3,781, $ 1,975, and $ 3,059. During 1984, petitioner orally requested payment from John. However, no legal action was taken to collect the purported loans. John testified that he could not have repaid the amounts owed on the alleged loans in 1984. *287 Section 166(d) allows a deduction for a nonbusiness bad debt as a short-term capital loss in the year in which it becomes wholly worthless. To qualify for a nonbusiness bad debt deduction, a taxpayer must establish that a bona fide debt was created and the debt became worthless within the tax year. Sec. 1.166-1(c), Income Tax Regs.; Andrew v. Commissioner, 54 T.C. 239, 245 (1970). A bona fide debt is a debt "which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs. A gift or contribution to capital is not considered a debt for purposes of section 166. Sec. 1.166-1(c), Income Tax Regs.; Matter of Uneco, Inc., 532 F.2d 1204, 1207 (8th Cir. 1976). Intra-family transactions are subject to close scrutiny. Caliqiuri v. Commissioner, 549 F.2d 1155, 1157 (8th Cir. 1977), affg. a Memorandum Opinion of this Court; Perry v. Commissioner, 92 T.C. 470, 481 (1989). The presumption is that a transfer between family members is a gift. Perry v. Commissioner, supra; Estates of Reynolds v. Commissioner, 55 T.C. 201 (1970). The presumption may be rebutted by an affirmative showing *288 that there existed a real expectation of repayment and intent to enforce the collection of the indebtedness. Estate of Van Anda v. Commissioner, 12 T.C. 1158, 1162 (1949), affd. per *954 curiam 192 F.2d 391 (2d Cir. 1951). To prevail in this matter, petitioner must show that the loan was made with a reasonable expectation, belief, and intention that the advance would be repaid. Zimmerman v. United States, 318 F.2d 611 (9th Cir. 1963). See also Hunt v. Commissioner, T.C. Memo 1989-335. This determination depends upon all of the facts and circumstances and generally no one fact is determinative. John Kelley Co. v. Commissioner, 326 U.S. 521 (1946); Hunt v. Commissioner, supra.In making this determination, we consider the following factors: (1) whether a note or other evidence of indebtedness exists and whether interest is charged, Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 353 (2d Cir. 1953); (2) whether any security or collateral is requested, Zimmerman v. United States, supra at 613; (3) whether a demand for repayment has been made, Montgomery v. United States, 87 Ct.Cl. 218, 23 F. Supp. 130 (1938), cert. denied 307 U.S. 632 (1939); (4) whether the parties' records, *289 if any, reflect the transaction as a loan, Road Materials, Inc. v. Commissioner, 407 F.2d 1121 (4th Cir. 1969), affg. a Memorandum Opinion of this Court; and (5) whether any repayments have been made, Estate of Ames v. Commissioner, a Memorandum Opinion of this Court dated Feb. 7, 1946, 5 T.C.M. 73, 15 P-H Memo T.C. par. 46,036. See also Hunt v. Commissioner, supra.
In this case, petitioner has not overcome the presumption that the advances to John were gifts or advancements for which she had no reasonable expectation of being repaid in full rather than loans. See Mercil v. Commissioner, 24 T.C. 1150, 1153 (1955). Petitioner did not request security on the auto or other assets purchased with the $ 15,500 advance. John did execute a note for this advance and made some repayments, which petitioner recorded on her worksheet. However, petitioner's testimony as to interest and loan repayments by John was at times inconsistent and in conflict with both the April 19, 1983, note and the worksheet. Petitioner made no written demand in 1984 of John for repayment of the $ 15,500 advance pursuant to the loan agreement. Under that agreement only John could designate that monthly payments be *290 allocated to principal. John, on his canceled checks, did not identify the payments as principal or interest. Yet, on her worksheet, petitioner in 1983 and 1984 recorded eleven $ 280 payments (six in 1983 and five in 1984) from John as follows: Rent $ 150, loan repayment $ 130. Two of the six loan repayments ($ 260) in 1983 and all five of the loan repayments in 1984 ($ 650) were included on petitioner's 1983 and 1984 tax returns as interest income received from John Crotty. With respect to the three advances making up the second alleged loan (now reduced to $ 11,000), there was no note and no provision for paying interest, only a memorandum as to how much petitioner thought she had advanced John without reimbursement as of January 9, 1984. Petitioners's testimony regarding the balance still owed by John (from the second alleged loan) was confused. Based on all of the facts and circumstances of this case, we find that the amounts claimed as nonbusiness bad debts constitute nondeductible gifts. See Cogan v. Commissioner, T.C. Memo. 1971-251. Respondent is sustained on this issue. However, a Rule 155 computation will be necessary since the interest amounts allegedly received from *291 John and reported by petitioner as income are not taxable income to petitioner. Issue 2. Deductibility of Rental Expense
On Schedule E (Supplemental Income Schedule) attached to her 1985 income tax return, petitioner claimed a rental loss in the amount of $ 2,437.65. In his notice of deficiency, respondent disallowed $ 1,710 of the claimed loss as not qualifying for a deduction under any section of the Internal Revenue Code. In June 1983, petitioner purchased a duplex townhouse at 8322-8324 West Crawford Avenue, Milwaukee, Wisconsin, (hereinafter the 8322 property and 8324 property) for $ 76,220. The property consisted of two three-bedroom and full-basement townhouses. The 8324 property basement also contained a bar area. During the years 1983 and 1984, petitioner rented the 8322 and 8324 properties to various tenants not related to her and also to her son and daughter, John and Kathleen. The unrelated tenants' rent ranged from $ 400 to $ 450 per month during 1983 and 1984. During 1985, the 8324 property was rented to an unrelated tenant for $ 450 per month. In May 1985, her son John, and his wife, Constance, moved into the 8322 property with Kathleen. Kathleen and John each *292 paid $ 150 rent for a total of $ 300 per month for the remainder of the 1985 year. No lease was executed between petitioner and her children, although leases were executed by petitioner with the unrelated tenants. During 1985, John testified in general terms that he performed maintenance work on petitioner's 8322 and 8324 properties. However, there was no testimony or other evidence of time *955 expended by John which would permit us to place a value on John's services for rental reduction purposes. John worked full-time in 1985 purchasing, renovating, and selling foreclosure property. For the taxable years 1983 through 1985, petitioner reported losses from the rent of her townhouses on Form 1040, Schedules E. For the taxable year in issue, the loss reported was as follows: Taxes &
Profit
Year
Income
Expenses
Depreciation
Interest
(Loss)
1985
$ 8,550
$ 505.49
$ 5,848.81
$ 3,366.94
($ 1,171.24)
Respondent has submitted the following calculation of the rental loss allocable to the portion of the duplex rented to petitioner's children: Rental Income
$ 3150.00 Expenses [2] *293 Advertising
17.00 Insurance
113.00 Repairs
15.00 Taxes
1683.00 Utilities
108.00
Total Expenses
1936.00 Depreciation
2924.00 Rental Loss
$ (1710.00) The explanation of items page attached to the notice of deficiency states that: It has not been established that any loss more than $ 728 qualifies for a deduction under any section of the Internal Revenue Code. The $ 728.00 loss was determined by subtracting the rental loss adjustment of $ 1,710.00 from the loss of $ 2,437.65 claimed by petitioner on Schedule E of her return. (Schedule E includes the townhouse loss of $ 1,171.24 disclosed above plus a loss of $ 1,266.41 on another rental property not in issue in this case). Petitioner contends that she engaged in the rental activity for profit and is therefore entitled to deduct all ordinary and necessary expenses incurred in connection with the 8322 property as provided by section 212. Respondent, however, argues that only one-half of the expenses may be properly deducted since petitioner is not engaged in renting her 8322 property for profit under section 183 because she rented it to her children for less than fair market value. *294 Petitioner has the burden of proving that the income received from her son and daughter for rental of the 8322 property represents the fair rental value of that property in 1985. Rule 142(a); see also Bindseil v. Commissioner, T.C. Memo. 1983-411. Section 183(a) provides the general rule that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided by this section." Section 183(b)(1) provides that deductions which would be allowable without regard to whether such activity is engaged in for profit shall be allowed. Section 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed, "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of" section 183(b)(1). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." The standard for determining *295 whether the expenses of an activity are deductible under either section 162 or section 212(1) or (2) is whether the taxpayer engaged in the activity "with the actual and honest objective of making a profit." Ronnen v. Commissioner, 90 T.C. 74, 91 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide. Hulter v. Commissioner, 91 T.C. 371, 393 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979). Whether a taxpayer had an actual and honest profit objective is a question of fact to be resolved from all relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981). In resolving this factual question, greater weight is given to the objective facts than to the taxpayer's after-the-fact statement of intent. Sec. 1.183-(2)(a), Income Tax Regs; Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); Siegel v. Commissioner, 78 T.C. 659, 699 (1982). Section 1.183-2(b), Income Tax Regs., *296 sets forth a nonexclusive list of nine objective factors relevant to the determination of whether an activity is engaged in for profit. A profit objective may be analyzed in relation to the nine factors set out in the regulations, but those *956 factors are not applicable or appropriate in every case. The facts and circumstances of the case in issue remain the primary test. Abramson v. Commissioner, 86 T.C. 360, 371 (1986). In this case, respondent claims that petitioner did not conduct her rental activity (the term "rental activity" will hereinafter refer to the 8322 property unless otherwise indicated) in a businesslike manner. Sec. 1.183(b)(1), Income Tax Regs. Petitioner disagrees, alleging that her children rented the 8322 property at its fair rental value because the 8324 property, rented to an unrelated tenant, contained a bar area in its basement. This argument is of no assistance to petitioner. The rental prices charged by petitioner to her children varied. During the first four months of 1985, petitioner rented the 8322 property to her daughter for only $ 200 per month. As previously stated, then petitioner's son moved into the property, her children each paid $ 150 for *297 a total of $ 300 per month. This amount was substantially lower than the $ 450 per month petitioner charged unrelated tenants for the 8324 property. Furthermore, petitioner admitted that during part of 1983 and 1984, the 8324 property was rented to her son and unrelated tenant at $ 150 each for a total of $ 300 per month and the 8322 property was rented to a daughter and an unrelated tenant for similar amounts. Petitioner treated both properties alike by not charging her son and the unrelated tenant additional rent for the 8324 property with its bar. Finally, under the circumstances, we do not accept petitioner's "self-serving testimony * * * as gospel," Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), that her children paid a fair rental value for the 8322 property because of lack of a bar area in that basement unit. We have previously held that the acceptance of rent at an amount substantially below fair rental value is a clear indication that a taxpayer's objective is not to make a profit. Jasionowski v. Commissioner, 66 T.C. 312, 322 (1976). If petitioner's objective was to make a profit, she would certainly have tried to maximize that profit by renting at the highest possible *298 price as she did with the unrelated tenant. Sec. 1.183-2(b0(1), Income Tax Regs. We find that petitioner's rental activity with respect to the 8322 property was not engaged in with an actual and honest profit objective within the meaning of section 183. Respondent's determination is sustained on this issue. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In making this calculation, respondent has deducted duplex expenses allocable only to the 8322 property (one-half of the total claimed on the return) except for property taxes, which are deductible in full.